No. 07-40651
_____
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

CODY WHEELER, DON DAVIS, and DAVEY WILLIAMS,

Plaintiffs-Appellees,

v.

PILGRIM'S PRIDE CORPORATION,

Defendant-Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

_____

BRIEF FOR AMICUS CURIAE THE UNITED STATES OF AMERICA
IN SUPPORT OF PLAINTIFFS-APPELLEES

_____

JEFFREY S. BUCHOLTZ
  Acting Assistant Attorney General

JOHN L. RATCLIFFE
  United States Attorney

MICHAEL S. RAAB
  (202) 514-4053
JONATHAN H. LEVY
  (202) 353-0169
  Attorneys, Appellate Staff
  Civil Division, Room 7231
  Department of Justice
  950 Pennsylvania Ave., NW
  Washington, D.C.  20530-0001

_____
_____

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . ii

INTEREST OF THE UNITED STATES.. . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE. . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE.. . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . 3

    A.   Statutory Background.. . . . . . . . . . . . . . . 3

    B.   Factual Background and Proceedings Below.. . . . . . 7

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . 10

SUMMARY OF THE ARGUMENT.. . . . . . . . . . . . . . . . . . 10

ARGUMENT: A PLAINTIFF ALLEGING A VIOLATION OF § 192(a)
        OR (b) NEED NOT ALLEGE AN ADVERSE EFFECT ON
        COMPETITION.. . . . . . . . . . . . . . . . . . . 11

    A.   The Statutory Language Is Not Limited To
        Acts Having An Adverse Effect On Competition.... . . 11

    B.   The Legislative History Does not Indicate
        Congressional Intent to Limit the Statute
        to Acts Having an Adverse Effect on
        Competition.. . . . . . . . . . . . . . . . . . . 14

    C.   The USDA's Interpretation of § 192(a)
        and (b) Is Entitled to Chevron Deference.... . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

**CASES:**

Armour & Co. v. United States,
     402 F.2d 712 (7th Cir. 1968).. . . . . . . . . . . . . . 19

Been v. O.K. Indus., Inc.,
     495 F.3d 1217 (10th Cir. 2007).. . . . . . . . . . . 26, 27

Bowman v. USDA, 363 F.2d 81 (5th Cir. 1966).. . . . . 13, 14, 23

Bozeman v. Orum, 422 F.3d 1265 (11th Cir. 2005).. . . . . . . 10

Butz v. Glover Livestock Comm'n Co.,
     411 U.S. 182 (1973). . . . . . . . . . . . . . . . . . 18

Chevron U.S.A. Inc. v. Natural Resources
     Defense Council, Inc., 467 U.S. 837 (1984).. . . . . . . 23

Estate of Coward v. Nicklos Drilling Co.,
     505 U.S. 469 (1992). . . . . . . . . . . . . . . . . . 25

DeJong Packing Co. v. USDA,
     618 F.2d 1329 (9th Cir.), cert. denied,
     449 U.S. 1061 (1980).. . . . . . . . . . . . . . . . . 19

FTC v. Sperry & Hutchinson Co., 405 U.S. 233 (1972).. . . 20, 21

Gerace v. Utica Veal Co.,
     580 F. Supp. 1465 (N.D.N.Y. 1984). . . . . . . . . . . 27

Hays Livestock Comm'n Co. v. Maly Livestock
     Comm'n Co., 498 F.2d 925 (10th Cir. 1974). . . . . . 3, 23, 24

Hyatt v. United States,
     276 F.2d 308 (10th Cir. 1960). . . . . . . . . . . . . 18

IBP, Inc. v. Glickman,
     187 F.3d 974 (8th Cir. 1999).. . . . . . . . . . . . . 25

Jackson v. Swift Eckrich, Inc.,
     53 F.3d 1452 (8th Cir. 1995).. . . . . . . . . . . . . . 5

Kinkaid v. John Morrell & Co.,
     321 F. Supp. 2d 1090 (N.D. Iowa 2004). . . . . . . . . 13

<u>London v. Fieldale Farms Corp.</u>,
    410 F.3d 1295 (11th Cir.), <u>cert. denied</u>,
    546 U.S. 1034 (2005). . . . . . . . . . . . . . . . 26, 27

<u>S.D. Warren Co. v. Maine Bd. of Envtl. Prot.</u>,
    126 S. Ct. 1843 (2006). . . . . . . . . . . . . . . . 13

<u>Schumacher v. Tyson Fresh Meats, Inc.</u>,
    434 F. Supp. 2d 748 (D.S.D. 2006). . . . . . . . . . . 27

<u>In re Sealed Case</u>, 223 F.3d 775 (D.C. Cir. 2000). . . . . . . 24

<u>Spencer Livestock Comm'n Co. v. USDA</u>,
    841 F.2d 1451 (9th Cir. 1988). . . . . . . . . . . . 14, 17

<u>Stafford v. Wallace</u>, 258 U.S. 495 (1922). . . . . . . . . passim

<u>Texas Coalition of Cities for Util. Issues v. FCC</u>,
    324 F.3d 802 (5th Cir. 2003). . . . . . . . . . . . . . 13

<u>Travelers Indem. Co. v. Manley Cattle Co.</u>,
    553 F.2d 943 (5th Cir. 1977). . . . . . . . . . . . . . 17

<u>United States v. All Star Indus.</u>, 962 F.2d 465,
    <u>cert. denied sub nom. Midco Pipe & Tube</u>,
    <u>Inc. v. United States</u>, 506 U.S. 940 (1992). . . . . . . 21

<u>United States v. Donahue Bros.</u>,
    59 F.2d 1019 (8th Cir. 1932). . . . . . . . . . . . . 12, 17

<u>Van Wyk v. Bergland</u>,
    570 F.2d 701 (8th Cir. 1978). . . . . . . . . 17. 18. 23. 24

<u>Wilson & Co. v. Benson</u>,
    286 F.2d 891 (7th Cir. 1961). . . . . . . . . . . . . . 12

**STATUTES:**

Packers and Stockyards Act, 7 U.S.C. §§ 181 <u>et seq</u>. . . . passim

  7 U.S.C. § 182(10). . . . . . . . . . . . . . . . . . . . 5

  7 U.S.C. § 192(a). . . . . . . . . . . . . . . . . . . . passim

  7 U.S.C. § 192(b). . . . . . . . . . . . . . . . . . . . passim

  7 U.S.C. § 193(a). . . . . . . . . . . . . . . . . . . . 23

7 U.S.C. § 213(a). . . . . . . . . . . . . . . . . . . . 13, 14

7 U.S.C. § 224. . . . . . . . . . . . . . . . . . . . . 5

7 U.S.C. § 228(a). . . . . . . . . . . . . . . . . . . . 5

Poultry Producers Financial Protection Act of 1987,
     Pub. L. No. 100-173, 101 Stat. 917 (1987). . . . . . . . . 5

15 U.S.C. § 45. . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 1292(b). . . . . . . . . . . . . . . . . . . 2, 9

Pub. L. No. 74-272, 49 Stat. 648 (1935). . . . . . . . . 4, 16, 25

Pub. L. No. 94-410, 90 Stat. 1249 (1976). . . . . . . . . . 5

Pub. L. No. 107-171, § 10502(b)(1),
     116 Stat. 134, 509 (2002). . . . . . . . . . . . . . . . 4

## ADMINISTRATIVE AND CONGRESSIONAL MATERIALS:

In re Corn State Meat Co., Inc.,
     45 Agric. Dec. 995 (1986). . . . . . . . . . . . . . . 24

In re IBP, Inc., 57 Agric. Dec. 1353 (1998). . . . . . . . . 25

In re ITT Continental Baking Co.,
     44 Agric. Dec. 748 (1985). . . . . . . . . . . . . . . 24

In re Ozark County Cattle Co.,
     49 Agric. Dec. 336 (1990). . . . . . . . . . . . . . . 24

In re Rodman, 47 Agric. Dec. 885 (1988). . . . . . . . . . . 24

In re Victor L. Kent & Sons, Inc.,
     47 Agric. Dec. 692 (1988). . . . . . . . . . . . . . . 24

In re White, 47 Agric. Dec. 229 (1988). . . . . . . . . . . 24

61 Cong. Rec. 1805 (1921). . . . . . . . . . . . . . . . 20

H.R. Rep. No. 85-1048, reprinted in
     1958 U.S.C.C.A.N. 5212, 5213. . . . . . . . . . . . . . 16, 17

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 07-40651
_____

CODY WHEELER, DON DAVIS, and DAVEY WILLIAMS,

Plaintiffs-Appellees,

v.

PILGRIM'S PRIDE CORPORATION,

Defendant-Appellant.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
_____

BRIEF FOR AMICUS CURIAE THE UNITED STATES OF AMERICA
IN SUPPORT OF PLAINTIFFS-APPELLEES
_____

## INTEREST OF THE UNITED STATES

This case concerns provisions of the Packers and Stockyards Act, 7 U.S.C. §§ 181 <u>et seq.</u>  The question presented here is whether it is possible to prove the existence of (1) an "unfair, unjustly discriminatory, or deceptive practice or device" in violation of 7 U.S.C. § 192(a) or (2) an "undue or unreasonable preference or advantage" or "undue or unreasonable prejudice or disadvantage" in violation of 7 U.S.C. § 192(b) without demonstrating an adverse effect on competition.

The United States Department of Agriculture is responsible for administering the Packers and Stockyards Act, and it accordingly has a strong interest in ensuring that the Act is interpreted and

applied properly.  As explained below, the district court correctly held that § 192(a) and (b) are not limited to acts having an adverse effect on competition.

## STATEMENT OF THE ISSUE

Whether a violation of 7 U.S.C. § 192(a) or (b) may be proven without evidence of an adverse effect on competition.

## STATEMENT OF THE CASE

Plaintiffs are chicken farmers who have contracts to raise chickens for defendant Pilgrim's Pride Corporation ("Pilgrim"). Their complaint alleges, among other things, that Pilgrim had a preferential arrangement with another grower (operated by Pilgrim's Chief Executive Officer) for growing chicks and that Pilgrim neither informed them of this arrangement nor offered them the same or a similar arrangement.  They allege Pilgrim's failure to offer them the same or similar arrangement violates 7 U.S.C. § 192(a) and (b).  The district court denied Pilgrim's summary judgment motion, which was based on the argument that proof of adverse impact on competition is a necessary element of a claim under 7 U.S.C. § 192(a) or (b). The district court certified this ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and this Court granted permission to pursue the appeal.

**STATEMENT OF THE FACTS**

A.  Statutory Background

1.  The Packers and Stockyards Act ("PSA") was enacted in 1921 "to comprehensively regulate packers, stockyards, marketing agents and dealers." Hays Livestock Comm'n Co. v. Maly Livestock Comm'n Co., 498 F.2d 925, 927 (10th Cir. 1974).  The "chief evil" that Congress sought to regulate was "the monopoly of the packers, enabling them unduly and arbitrarily to lower prices to the shipper, who sells, and unduly and arbitrarily to increase the price to the consumer, who buys." Stafford v. Wallace, 258 U.S. 495, 514-15 (1922).  "Another evil" Congress wanted to combat was "exorbitant charges, duplication of commissions, [and] deceptive practices in respect of prices." Id. at 515.

The section at issue in this case, which is codified at 7 U.S.C. § 192, provides that "[i]t shall be unlawful for any packer or swine contractor with respect to livestock, meats, meat food products, or livestock products in unmanufactured form, or for any live poultry dealer with respect to live poultry, to:

> (a) Engage in or use any unfair, unjustly discriminatory, or deceptive practice or device; or
>
> (b) Make or give any undue or unreasonable preference or advantage to any particular person or locality in any respect, or subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect; or
>
> (c) Sell or otherwise transfer to or for any other packer, swine contractor, or any live poultry dealer, or buy or otherwise receive from or for any other packer,

3

swine contractor, or any live poultry dealer, any article
for the purpose or with the effect of apportioning the
supply between any such persons, if such apportionment
has the tendency or effect of restraining commerce or of
creating a monopoly; or

(d) Sell or otherwise transfer to or for any other
person, or buy or otherwise receive from or for any other
person, any article for the purpose or with the effect of
manipulating or controlling prices, or of creating a
monopoly in the acquisition of, buying, selling, or
dealing in, any article, or of restraining commerce; or

(e) Engage in any course of business or do any act for
the purpose or with the effect of manipulating or
controlling prices, or of creating a monopoly in the
acquisition of buying, selling, or dealing in, any
article, or of restraining commerce; or

(f) Conspire, combine, agree, or arrange with any other
person (1) to apportion territory for carrying on
business, or (2) to apportion purchases or sales of any
article, or (3) to manipulate or control prices; or

(g) Conspire, combine, agree, or arrange with any other
person to do, or aid or abet the doing of, any act made
unlawful by subdivisions (a), (b), (c), (d), or (e) of
this section."

Although section 192 originally applied only to the livestock
and meat packing industries, Congress amended the Act in 1935 to
include "live poultry dealers" within section 192's scope.
See Pub. L. No. 74-272, 49 Stat. 648 (1935).[1]  This expansion of
coverage was predicated on Congress's determination that:

> [t]he handling of the great volume of live
> poultry as an article of food for inhabitants
> of large centers of population is attendant
> with various unfair, deceptive, and fraudulent

---

[1]  Congress later amended the PSA to include "swine
contractor[s]" within the scope of § 192 as well.  Pub. L. No. 107-
171, § 10502(b)(1), 116 Stat. 134, 509 (2002).

4

> practices and devices, resulting in the
> producers sustaining sundry losses and
> receiving prices far below the reasonable
> value of their live poultry . . . and in
> unduly and arbitrarily enhancing the cost to
> consumers.

Id. The PSA defines a live poultry dealer as "any person engaged
in the business of obtaining live poultry by purchase or under a
poultry growing arrangement for the purpose of either slaughtering
it or selling it for slaughter by another." 7 U.S.C. § 182(10).

2. Congress has vested the Secretary of Agriculture with the
responsibility of administering the PSA. Accordingly, the
Secretary has express authority to "make such rules, regulations,
and orders as may be necessary to carry out" the statute. 7 U.S.C.
§ 228(a). The Act also authorizes the Secretary to enforce
violations of section 192 by packers and swine contractors through
formal adjudication. Id. § 193. That administrative enforcement
mechanism, however, does not apply to violations of section 192 by
live poultry dealers. Id.; see also Jackson v. Swift Eckrich,
Inc., 53 F.3d 1452, 1456-57 (8th Cir. 1995). Violations by live
poultry dealers may be enforced in federal district court either by
the Attorney General, 7 U.S.C. § 224, or by an aggrieved party, as
is being done by plaintiffs here, id. § 209.[2]

---

[2] The PSA was amended in 1976 to include the right to private
enforcement in district court against packers. See Pub. L. No. 94-
410, 90 Stat. 1249 (1976). This private right of action was
extended to actions against poultry dealers in 1987. See Poultry
Producers Financial Protection Act of 1987, Pub. L. No. 100-173,
(continued...)

3.  This case concerns two of the prohibitions within section 192:  (1) the prohibition of "unfair, unjustly discriminatory, or deceptive practice[s]" in section 192(a) and (2) the prohibition against providing "undue or unreasonable preference or advantage to any particular person or locality" and the complementary prohibition against "subject[ing] any particular person or locality to any undue or unreasonable prejudice or disadvantage," both in section 192(b).  The statute does not define the key phrases: "unfair, unjustly discriminatory, or deceptive practice," "undue or unreasonable preference or advantage," and "undue or unreasonable prejudice or disadvantage."  However, the Department of Agriculture interprets these statutory provisions as written and rejects the conclusion that, without saying so in the statute, Congress intended to make an adverse effect on competition a statutorily mandated element, as such, for all claims under 7 U.S.C. § 192(a) and (b).  In some circumstances, however, whether a particular practice has an adverse effect on competition may be material to determining whether the practice is "unfair" or "unjustly discriminatory" or results in an "undue or unreasonable" preference or prejudice under these subsections.

---

(...continued)
101 Stat. 917 (1987).

B.   <u>Factual Background and Proceedings Below</u>

1.   Plaintiffs are chicken "growers" who raise poultry under contract with Pilgrim's Pride Corporation ("Pilgrim"), a large live poultry dealer.  Under their contracts, which are typical for the industry, plaintiffs receive chicks, food, and medicine from Pilgrim, "grow" the chicks into chickens, and then provide the grown chickens to Pilgrim, which retains ownership over the chickens throughout the process.  Pilgrim Record Excerpts Tab E, at 2.  Plaintiffs are compensated for their efforts based on the efficiency with which they can grow their flocks as compared to other Pilgrim contractual growers in their geographical area.  <u>Id.</u>

Some chicken farmers have other arrangements with Pilgrim.  Relevant here is Pilgrim's arrangement with LTD Farm, which is operated by Bo Pilgrim, Pilgrim's Chief Executive Officer.  LTD purchases chicks, feed, and other supplies from Pilgrim, bears the risk of loss during the growing process, and then sells the grown chickens back to Pilgrim.  <u>Id.</u> at 2-3.

2.   Plaintiffs filed this lawsuit against Pilgrim, alleging, among other things, that Pilgrim's different treatment of LTD was unfair and constituted an undue or unreasonable preference in violation of 7 U.S.C. § 192(a) and (b).  Pilgrim Record Excerpts Tab E, at 3; Fifth Amended Complaint ¶¶ 57-58 (Docket No. 371).  Plaintiffs allege that Pilgrim never informed them of its arrangement with LTD and never offered them the same or similar

7

arrangement.  Id.  In a separate count, unrelated to alleged preferential treatment of LTD, plaintiffs allege that Pilgrim violated § 192(a) by (1) failing to provide them with information relevant to their contracts or allow independent assessment of certain contract-related data (2) retaliating against growers who raise questions, and (3) requiring growers to sign new contracts shifting environmental liability to growers, in breach of existing contracts.  Id. ¶¶ 63, 67-70.

Pilgrim filed a motion to dismiss, arguing "that to state a claim under the PSA, Plaintiffs must allege that Pilgrim's engaged in prohibited practices that caused an adverse effect on the market." Pilgrim Record Excerpts Tab F, at 4.  The district court denied the motion, noting that § 192(a), on its face, contained no requirement of an adverse market effect, while at least one other subsection, § 192(e), did explicitly contain such a requirement. Id. at 4-5.  Noting a split of authority regarding whether an adverse-effect-on-competition requirement should be inferred based on the legislative history, the district court adhered to the statutory language and declined to infer such a requirement. Pilgrim Record Excerpts Tab F, at 4-7.

Pilgrim later moved for summary judgment, reiterating its argument that no violation of § 192(a) or (b) can be found without proof of adverse effect on competition.  The district court denied the motion, reaffirming its holding that no such proof was

8

required.  The court held that § 192(c)-(f) prohibit certain acts that adversely affect competition, but that § 192(a) and (b) prohibit a broader set of acts, without reference to any effect on competition.  It also concluded that the legislative history relied upon by Pilgrim did not support Pilgrim's contentions.  The court explained that although preventing industry monopolization was one purpose of the statute, the Supreme Court had long ago determined that ridding the industry of deceptive trade practices was another statutory objective.  <u>See</u> Pilgrim Record Excerpts Tab E, at 9 (quoting <u>Stafford v. Wallace</u>, 258 U.S. 495, 514-15 (1922)).[3]

3.  The parties moved the district court to certify its summary judgment order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Pilgrim Record Excerpts Tab D.  The district court granted that motion, holding that the relevant controlling question of law is "whether a plaintiff must prove an adverse effect on competition in order to prevail under 7 U.S.C. §§ 192(a)-(b)."  Pilgrim's Record Excerpts Tab C.[4]  This Court subsequently granted permission to appeal.

---

[3]  Because it held that plaintiffs did not need to prove adverse effect on competition, the district court did not address whether there was a genuine issue of material fact regarding adverse effect on competition.  Plaintiffs argued that they would be able to demonstrate such an effect.  <u>See</u> Plaintiffs' Response to Defendant's Motion for Summary Judgment 23-24 (Docket No. 349).

[4]  The United States addresses only this controlling question of law and takes no position on whether plaintiffs are ultimately entitled to prevail on their claim.

## STANDARD OF REVIEW

The question of law before this Court is reviewed de novo. Bozeman v. Orum, 422 F.3d 1265, 1267 (11th Cir. 2005).

## SUMMARY OF ARGUMENT

The district court correctly rejected Pilgrim's contention that a plaintiff must always demonstrate an adverse effect on competition to establish a violation of 7 U.S.C. § 192(a) and (b). These provisions prohibit any "unfair, unjustly discriminatory, or deceptive practice," "undue or unreasonable preference or advantage" and "undue or unreasonable prejudice or disadvantage." Neither provision makes any explicit reference to effect on competition or otherwise indicates that it is limited to conduct having an adverse effect on competition. By contrast, Congress expressly limited the prohibitions in the immediately following subsections – § 192(c)-(f) – to acts having an adverse effect on competition, but included no such limitation in § 192(a) and (b). The statutory language thus makes clear that Congress did not intend to confine § 192(a) and (b) to acts adversely affecting competition.

The legislative history is consistent with the statutory text. In enacting the PSA, Congress's objective was to assure the free flow of livestock and meat products throughout the country. The statute furthered that goal primarily by seeking to prevent monopolization, but also by attempting to stop unfair and deceptive

business practices – practices that do not necessarily have an adverse impact on competition. Moreover, as explained below, Congress intended the PSA to be broader in reach than the FTC Act, which encompasses "unfair" practices without requiring proof of harm to competition. Accordingly, the PSA is properly understood to reach beyond acts adversely affecting competition. Although proof of an adverse effect on competition thus is not a statutorily-mandated element of all claims under § 192(a) and (b), there are circumstances in which the effect of a practice on competition will be material in determining whether the practice is "unfair" or "unjustly discriminatory."

The Secretary of Agriculture, who is responsible for administering the Act, has consistently interpreted § 192(a) and (b) not to require proof of an adverse effect on competition for all claims under these provisions. That longstanding interpretation is reasonable and warrants judicial deference.

## ARGUMENT

## THE ACTS PROHIBITED BY 7 U.S.C. § 192(a) AND (b) ARE NOT LIMITED TO THOSE HAVING AN ADVERSE EFFECT ON COMPETITION.

### A.  The Statutory Language Is Not Limited To Acts Having An Adverse Effect On Competition.

As the district court recognized, the text of the statute makes clear that Congress did not specify that proof of an adverse effect on competition is an element of a claim under 7 U.S.C. § 192(a) or (b). The statute prohibits acts that are "unfair,

11

unjustly discriminatory, or deceptive," 7 U.S.C. § 192(a), and that grant "undue or unreasonable preference or advantage" or impose "undue or unreasonable prejudice or disadvantage," 7 U.S.C. § 192(b). Neither of those provisions is limited by its terms to acts having an adverse effect on competition. See Wilson & Co. v. Benson, 286 F.2d 891, 895 (7th Cir. 1961) ("[T]he language in section [192(a)] does not specify that a 'competitive injury' or a 'lessening of competition' or a 'tendency to monopoly' be proved in order to show a violation of the statutory language."); United States v. Donahue Bros., 59 F.2d 1019, 1023 (8th Cir. 1932) ("The Secretary is granted authority to enforce just and reasonable practices and to prevent those unjust and unreasonable.").

This was not inadvertent. Elsewhere in the very same section of the Act, Congress was explicit when it wanted to limit statutory terms to conduct adversely affecting competition. See 7 U.S.C. § 192(c) (prohibiting specified apportionment "if such apportionment has the tendency or effect of restraining commerce or of creating a monopoly"); id. § 192(d) & (e) (forbidding specified acts done "for the purpose or with the effect of manipulating or controlling prices, or of creating a monopoly . . ., or of restraining commerce"); id. § 192(f) (forbidding monopolistic conspiracy).

As the Supreme Court has explained, when "Congress includes particular language in one section of a statute but omits it in

12

another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." <u>S.D. Warren Co. v. Maine Bd. of Envtl. Prot.</u>, 126 S. Ct. 1843, 1852 (2006) (internal quotation marks omitted); <u>accord</u> <u>Texas Coalition of Cities for Util. Issues v. FCC</u>, 324 F.3d 802, 808 n.4 (5th Cir. 2003). Accordingly, the presumption here is that Congress intentionally and purposely included references to anticompetitive or monopolistic behaviors in § 192(c), (d), (e), and (f) and intentionally and purposely omitted such references from § 192(a) and (b). <u>See</u> <u>Kinkaid v. John Morrell & Co.</u>, 321 F. Supp. 2d 1090, 1102-03 (N.D. Iowa 2004) (comparing § 192(a) with § 192(e) and observing that "the structure of [§ 192] suggests that 'unfair' or 'deceptive' practices are prohibited separately and apart from anticompetitive or 'monopolistic' practices, where these classes of conduct are prohibited in separate subsections").

The district court's ruling is consistent with this Court's interpretation of an analogous provision of the PSA. In <u>Bowman v. USDA</u>, 363 F.2d 81, 85 (5th Cir. 1966), this Court stated that a dealer's failure to pay livestock shippers constitutes "a proscribed deceptive practice" under the PSA, specifically 7 U.S.C. § 213(a), which has language that largely mirrors § 192(a).[5]

---

[5] Title 7 U.S.C. § 213(a) provides:

(continued...)

13

Although Bowman did not specifically address adverse effect on competition, a dealer's failure to pay shippers has no obvious anti-competitive effect.  This Court nonetheless stated that such a failure to pay necessarily constitutes "a proscribed deceptive practice" under the PSA.  Id.  And in the wake of Bowman, the Ninth Circuit expressly held that a § 213(a) violation exists "where the evidence establishes a deceptive practice, whether or not it harmed consumers or competitors."  Spencer Livestock Comm'n Co. v. USDA, 841 F.2d 1451, 1455 (9th Cir. 1988).  The same rule necessarily should apply to § 192(a).  As explained below, however, there are some circumstances in which the effect of a practice on competition nevertheless will be material in determining whether a practice is "unfair" or "unjustly discriminatory."  See P. 22, infra.

**B.    The Legislative History Does not Indicate Congressional Intent to Limit the Statute to Acts Having an Adverse Effect on Competition.**

The legislative history of the Act is consistent with the statutory text.  Pilgrim suggests that § 192(a) and (b) must be limited to acts adversely affecting competition because the purpose of the PSA was to protect competition.  See Pilgrim Br. 32-33.  As

---

[5](...continued)
        It shall be unlawful for any stockyard owner, market agency, or dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with (the) receiving, marketing, buying, or selling on a commission basis or otherwise . . . of livestock.

14

explained below, however, Congress had multiple purposes in enacting the PSA – including, but not limited to, preventing monopolization. Congress was also concerned with preventing unfair, unjustly discriminatory, and deceptive business practices, and an act may be unfair, unjustly discriminatory, or deceptive without necessarily having an adverse effect on competition. The legislative history also demonstrates that Congress intended the PSA to be broader than the FTC Act, which itself covers unfair or deceptive practices without proof of adverse effect on competition.

1. The Supreme Court has made clear that Congress's purpose in enacting the PSA went beyond the prevention of monopolies:

> The object to be secured by the act is the free and unburdened flow of livestock from the ranges and farms of the West and Southwest through the great stockyards and slaughtering centers on the borders of that region, and thence in the form of meat products to the consuming cities of the country in the Middle West and East, or, still as livestock, to the feeding places and fattening farms, in the Middle West or East for further preparation for the market.

> The chief evil feared is the monopoly of the packers, enabling them unduly and arbitrarily to increase the price to the consumer, who buys. Congress thought the power to maintain this monopoly was aided by control of the stockyards. Another evil, which it sought to provide against by the act, was exorbitant charges, duplication of commissions, deceptive practices in respect of prices, in the passage of the live stock through the stockyards, all made by collusion between the stockyards management and the commission men, on the one hand, and the packers and dealers, on the other.

15

Stafford v. Wallace, 258 U.S. 495, 514-15 (1922) (emphasis added). The Court in Stafford thus recognized that the overriding object of the PSA was not the narrow one of preventing monopolies, but the broader one of ensuring the free flow of livestock and meat products throughout the nation. Although the "chief" evil to be prevented was monopolization, the Court recognized that Congress was also concerned with combating other misconduct, including "deceptive practices," that are encompassed by the text of § 192(a) and (b). To the same effect, when the PSA was amended in 1958 to reflect "technological and economic changes" since its original enactment, the House of Representatives Committee on Agriculture stated that "[t]he primary purpose of [the PSA] is to assure fair competition and fair trade practices." H.R. Rep. No. 85-1048, reprinted in 1958 U.S.C.C.A.N. 5212, 5213, 5214 (emphasis added) (quoted in Pilgrim Br. 32). The Report further observed that "[p]rotection is also provided to members of the livestock marketing and meat industries from unfair, deceptive, unjustly discriminatory, and monopolistic practices of competitors, large or small." Id. at 5213. Indeed, when the PSA was expanded to include live poultry dealers, Congress did not even mention the prevention of monopolies, but instead cited "various unfair, deceptive, and fraudulent practices and devices" as the harm to be alleviated. Pub. L. No. 74-272, 49 Stat. 648, 648 (1935).

16

In accordance with <u>Stafford</u> and the legislative history, courts have understood that the PSA was intended to combat unfair and deceptive trade practices and other evils in addition to monopolization. <u>See</u> <u>Spencer Livestock Comm'n Co. v. USDA</u>, 841 F.2d 1451, 1455 (9th Cir. 1988) (quoting H.R. Rep. No. 85-1048 and noting that the PSA "was not intended merely to prevent monopolistic practices, but also to protect the livestock market from unfair and deceptive business tactics"); <u>see also</u> <u>Van Wyk v. Bergland</u>, 570 F.2d 701, 704 (8th Cir. 1978) ("One purpose of the Act is to assure fair trade practices."); <u>United States v. Donahue Bros.</u>, 59 F.2d 1019, 1023 (8th Cir. 1932) ("One of the purposes of this act was to protect the owner and shipper of live stock, and to free him from the fear that the channel through which his product passed, through discrimination, exploitation, overreaching, manipulation, or other unfair practices, might not return to him a fair return for his product."); <u>cf.</u> <u>Travelers Indem. Co. v. Manley Cattle Co.</u>, 553 F.2d 943, 945 (5th Cir. 1977) (holding that the purpose of one provision of the PSA (not § 192) "was to safeguard the farmers and ranchers who produce cattle against the losses they would suffer if they sold their livestock to insolvent or defaulting purchasers. By building confidence in the financial stability of dealers, the Act intended to stabilize and encourage the production of beef and other livestock").

17

In keeping with these broader purposes of the PSA, courts have found a variety of acts that have no apparent effect on competition to violate the statute.  See Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 183 (1973) ("incorrect weighing of livestock" violated § 192(a)); Van Wyk, 570 F.2d at 704 (purchaser's failure to timely pay for livestock could violate the PSA); Hyatt v. United States, 276 F.2d 308, 310-311, 312 (10th Cir. 1960) (upholding administrative finding that falsification of various consignment documents violated the PSA, despite lack of evidence "that any transactions prejudiced the interests of other consignors," and specifically rejecting contention that an act that "'hurts no one'" could not violate the statute).

Pilgrim does not address these cases and implies that the sole purpose in enacting the PSA was to combat anti-competitive conduct. Pilgrim repeatedly quotes only the short snippet from Stafford addressing the "chief evil" addressed by the PSA, omitting any reference to Stafford's broader discussion of the "object" of the PSA (to facilitate the flow of livestock and meat products throughout the nation) or of the other evils addressed by the statute, including deceptive practices.  See Pilgrim Br. 6-7, 32, 37.[6]  But Stafford makes clear that the PSA was intended to foster

_____

[6] Pilgrim also quotes Stafford's recitation of five examples of the packers' conduct which led to the enactment of the PSA and argues that these examples demonstrate that the harms the PSA was designed to combat were harms to competition.  Pilgrim Br. 42-43
(continued...)

competition, ensure fair practices and reasonable charges, and eradicate deceptive practices, all to accomplish the overarching statutory objective of facilitating the nationwide flow of livestock and meat products. The specific provisions of the PSA at issue here – § 192(a) and (b) – further that overarching statutory objective even though they are not limited to conduct with demonstrable anticompetitive effect.

2. Another component of the legislative history points in the same direction. As Pilgrim properly acknowledges, the PSA "was drafted to go beyond the scope of the antitrust statutes," including "'the Sherman Act and other pre-existing legislation such as the Clayton Act and the Fair Trade Commission Act ["FTC Act"].'" Pilgrim Br. at 33-34 (quoting DeJong Packing Co. v. USDA, 618 F.2d 1329, 1335 n.7 (9th Cir.), cert. denied, 449 U.S. 1061 (1980)). Congress intended section 192(a) to be "read liberally enough to take care of the types of anti-competitive practices properly deemed 'unfair' by the Federal Trade Commission (15 U.S.C. § 45) and also to reach any of the special mischiefs and injuries inherent in livestock and poultry traffic." Armour & Co. v. United

_____

[6](...continued)
(quoting Stafford). But Stafford also noted an additional relevant harm to be combated by the PSA – a simple fraud, apparently unrelated to any anti-competitive conduct. Stafford, 258 U.S. at 502 (referring to "the frequency with which commission men reported to shippers that live stock had been crippled and had to be sold in that condition at a lower price, arousing suspicion as to the fact and if it was a fact, as to the cause of the crippling").

States, 402 F.2d 712, 722 (7th Cir. 1968); see also 61 Cong. Rec. 1805 (1921) (statement of Rep. Anderson) (Act "goes further than" Federal Trade Commission Act's prohibition of unfair methods of competition because it is not limited to injury to competitors); id. at 1806 (statement of Rep. Rayburn) (Federal Trade Commission given "wide powers, but not as wide as [those given] the Secretary of Agriculture under this bill").

The FTC Act prohibits "unfair or deceptive acts or practices," and is thus parallel to several of the provisions in the PSA. See 15 U.S.C. § 45(a)(1). The Supreme Court has held that, in doing so, the FTC Act "empower[s] the Commission to define and proscribe an unfair competitive practice, even though the practice does not infringe either the letter or the spirit of the antitrust laws," and, more specifically, to proscribe "practices as unfair or deceptive in their effect upon consumers, regardless of their nature or quality as competitive practices or their effect on competition." FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 239 (1972) (emphasis added). Thus, § 192(a) was intended to reach more broadly than the FTC Act, and the FTC Act itself covers some actions that have no demonstrable adverse effect on competition.

3. The legislative history of 7 U.S.C. § 192(a) and (b), like their text, thus makes clear that they cover at least some actions that have no demonstrable adverse effect on competition and that

Pilgrim's broad contention to the contrary was properly rejected.[7] Not only may practices be "deceptive" whether or not they have a demonstrable effect on competition, but Congress's prohibition of "unfair" and "unjustly discriminatory" practices in § 192(a) is broad enough to encompass certain conduct that does not itself have a demonstrable anticompetitive effect.

Thus, for example, there may be contractual terms that are so one-sided and abusive that they are properly condemned as "unfair" within the meaning of the PSA, much as certain contractual terms are prohibited under other laws regulating consumer installment contracts or loan agreements. Denying growers access to information necessary to determine whether they have been denied contractual rights or opportunities may rise to the level of an "unfair" practice. The arbitrary exclusion of a grower from participation in a dealer's contractual arrangements in retaliation for legitimate complaints by the grower or for other non-business reasons could constitute an "unfair" or "unjustly discriminatory"

---

[7] Having acknowledged that the PSA was intended to be broader than the Sherman Act, the Clayton Act, and the FTC Act, Pilgrim suggests that it nonetheless should be limited to practices "that unreasonably restrain[] competition," citing this Court's decision in United States v. All Star Indus., 962 F.2d 465, 469, cert. denied sub nom. Midco Pipe & Tube, Inc. v. United States, 506 U.S. 940 (1992). See Pilgrim Br. 35 n.125. But the All Star case addressed only the Sherman Act, which is more limited in scope than the FTC Act. See FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 239 (1972). It is irrelevant that the Sherman Act may be limited to anti-competitive conduct; the FTC Act is broader than the Sherman Act, and the PSA is broader than the FTC Act.

practice, without a requirement to show an adverse effect on competition. Similarly, the arbitrary favoring of a particular grower for other than legitimate business reasons or on terms not made available to other growers might constitute "undue or unreasonable preference or advantage" or "undue or unreasonable prejudice or disadvantage" under 7 U.S.C. § 192(b).

On the other hand, Congress's purpose to prevent monopolization and protect competitive markets requires that practices that have the potential to enhance efficiency not be condemned without consideration of competitive effects. Thus, for example, a complaint merely alleging the existence of different distribution arrangements with different compensation provisions, without any allegation of anticompetitive effect, would not provide a basis for condemnation of those arrangements as "unfair" or "unjustly discriminatory" under § 192(a), at least in the absence of further allegations of the sort of arbitrary, non-business related preferences mentioned above. But Pilgrim's basic contention in this case – that _every_ claim under § 192(a) and (b) requires a demonstrable anticompetitive effect, including claims based on conduct with no significant potential to enhance efficiency or promote competition – would limit the PSA in ways that find no justification in Congress's purposes.

**C.    The USDA's Interpretation of § 192(a) and (b) Is Entitled to _Chevron_ Deference.**

The agency's reasonable interpretation of the Act is entitled to deference. _Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc._, 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ."); _cf._ _Bowman v. USDA_, 363 F.2d 81, 84 (5th Cir. 1966) (Secretary's consistent interpretation of solvency, undefined in the PSA, should be given "great weight"); _Van Wyk v. Bergland_, 570 F.2d 701, 705 (8th Cir. 1978) (according "great deference" to the Secretary's determination that failure to timely pay for livestock is an unfair or deceptive practice or device under the PSA); _Hays Livestock Comm'n Co. v. Maly Livestock Comm'n Co._, 498 F.2d 925, 930, 931 (10th Cir. 1974) (Secretary's interpretation of unfair or deceptive practices is entitled to "great deference" on review of reparation orders).

Pilgrim proffers two reasons not to defer, and neither has merit. First, Pilgrim notes (correctly) that the USDA does not adjudicate claims of violation of § 192 by live poultry dealers. Pilgrim Br. 44. In a footnote, however, Pilgrim appears to concede, as it must, that USDA adjudicates claims of violation of § 192 by packers and swine contractors. Pilgrim Br. 44 n.159 (citing 7 U.S.C. § 193(a)). In the course of those adjudications, "[t]he Department has consistently taken the position that in order

to prove that any practice is unfair under . . . 7 U.S.C. § 192(a)
. . . it is not necessary to prove predatory intent, competitive
injury, or likelihood of injury." In re Ozark County Cattle Co.,
49 Agric. Dec. 336, 365 (1990) (internal quotations omitted).[8]
This interpretation warrants judicial deference in any case
involving § 192(a) or (b), including those that the agency did not
adjudicate. See In re Sealed Case, 223 F.3d 775, 779, 780 (D.C.
Cir. 2000) (in criminal proceeding, court defers to FEC
adjudicatory interpretation of statute it administers, even though
FEC does not have authority to adjudicate (or even instigate)
criminal proceedings).

Because Congress granted USDA authority to adjudicate alleged
statutory violations by packers and swine contractors, there is no
question that its statutory interpretation is entitled to deference
in that context. E.g., Van Wyk, 570 F.2d at 705; Hays, 498 F.2d at
930, 931. But if, as Pilgrim argues, USDA's interpretation should
not be given deference when § 192 is applied to poultry dealers,
the result would be that the very same statutory phrase (e.g.,
"unfair, unjustly discriminatory, or deceptive practice or device")
in the very same statutory provision (§ 192(a)) would mean one
thing applied to a packer and something different applied to a live

---

[8] Accord, e.g., In re Rodman, 47 Agric. Dec. 885, 912 (1988);
In re Victor L. Kent & Sons, Inc., 47 Agric. Dec. 692, 742 (1988);
In re White, 47 Agric. Dec. 229, 276 (1988); In re Corn State Meat
Co., Inc., 45 Agric. Dec. 995, 1023 (1986); In re ITT Continental
Baking Co., 44 Agric. Dec. 748, 781 (1985).

poultry dealer.  This would be contrary to the plain statutory language and Congress's clear intent when it added live poultry dealers to § 192 that they be treated the same as packers in this regard.  <u>See</u> 7 U.S.C. § 192 (applying to "any packer or swine contractor with respect to livestock," and "any live poultry dealer with respect to live poultry"); Pub. L. No. 74-272, 49 Stat. 648, 649 (1935) (adding "the words 'or any live poultry dealer or handler' after the word 'packer' wherever it occurs in [specified provisions of the PSA, including what is now 7 U.S.C. § 192].").  It would also conflict with the canon that "identical terms within an Act bear the same meaning." <u>Estate of Coward v. Nicklos Drilling Co.</u>, 505 U.S. 469, 479 (1992).

Pilgrim also suggests that <u>Chevron</u> deference is inappropriate because the agency's position has been inconsistent, quoting a single administrative decision which stated that an action violated § 192(a) "'because it ha[d] the effect or potential of reducing competition.'"  Pilgrim Br. 45 (quoting <u>In re IBP, Inc.</u>, 57 Agric. Dec. 1353 (1998)).[9]  The quoted statement is entirely consistent with the agency's decades-old interpretation of § 192(a) as set forth in this brief.  <u>IBP</u> states that an act violates § 192(a) if it has the effect or potential of reducing competition; it does not say that the <u>only</u> way an act can violate § 192(a) is if it has that

---

[9] Although not directly relevant here, we note that the administrative decision in <u>In re IBP</u> was reversed. <u>IBP, Inc. v. Glickman</u>, 187 F.3d 974 (8th Cir. 1999).

effect or potential.  Pilgrim here confuses what is <u>sufficient</u> to violate § 192(a) with what is <u>necessary</u> to violate that provision. <u>See</u> Pilgrim Record Excerpts Tab E, at 9-10.  Under Pilgrim's logic the statement that someone violated Title VII "because he discriminated on the basis of race," would imply that other forms of discrimination, such as those based on national origin, are not covered by the statute.  But there is more than one way to violate § 192(a), and the fact that adversely affecting competition is one way does not mean that there is no other.  Pilgrim cites no administrative decision or other pronouncement by the USDA stating that adverse effect on competition is a necessary element of a claim under § 192(a) or (b), and we are aware of none.

As Pilgrim notes, the Tenth and Eleventh Circuits have adopted its interpretation of the Act.  <u>See</u> <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d 1217 (10th Cir. 2007); <u>London v. Fieldale Farms Corp.</u>, 410 F.3d 1295 (11th Cir.), <u>cert. denied</u>, 546 U.S. 1034 (2005).  For the reasons explained above, we respectfully disagree with those decisions.  Instead of relying upon the statutory language and the legislative history quoted above, the Eleventh Circuit in <u>London</u> was "guided by the PSA's antitrust ancestry, case law, and policy considerations."  410 F.3d at 1307; <u>accord</u> <u>id.</u> at 1303.  Similarly, the Tenth Circuit in <u>Been</u> failed to give proper effect to the different language employed by Congress in § 192(a) and (b) on the one hand and § 192(c)-(f) on the other.  495 F.3d at 1229.

Moreover, both Been and London erroneously treat the PSA's "primary" or "chief" purpose as its only purpose. Been, 495 F.3d at 1228, 1232; London, 410 F.3d at 1301, 1302, 1307. The courts in both cases assumed that the PSA must be interpreted as narrowly as previously enacted antitrust statutes, rather than more broadly, Been, 495 F.3d at 1228; London, 410 F.3d at 1303, and failed to take account of the fact that the PSA was intended to be broader than the FTC Act in particular, see Been, 495 F.3d at 1227 n.7.

Finally, Been and London erred in refusing to defer to the USDA's interpretation of the statute. By suggesting that deference is appropriate when the statute is applied to packers but not when applied to live poultry dealers, see Been, 495 F.3d at 1226-27; London, 410 F.3d at 1304, these decisions erroneously imply that the same language in the same section of the same statute can mean different things when applied to different entities.

Here, the district court correctly rejected that approach and gave proper effect to the plain language of the statute in accordance with the legislative history and USDA's longstanding interpretation. See Pilgrim Record Excerpts Tab E, at 5-10; accord Schumacher v. Tyson Fresh Meats, Inc., 434 F. Supp. 2d 748, 753-54 (D.S.D. 2006) (§ 192(a) "does not prohibit only those unfair and deceptive practices which adversely affect competition"); Gerace v. Utica Veal Co., 580 F. Supp. 1465, 1469-70 (N.D.N.Y. 1984) (section

192(a), prohibiting unfair or deceptive practices by packers, does not require proof of injury to competition).

## CONCLUSION

For the foregoing reasons, the district court's holding that 7 U.S.C. § 192(a) and (b) do not require a showing of adverse effect on competition should be affirmed.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
  Acting Assistant Attorney General

JOHN L. RATCLIFFE
  United States Attorney

MICHAEL S. RAAB
  (202) 514-4053
JONATHAN H. LEVY
  (202) 353-0169
  Attorneys, Appellate Staff
  Civil Division, Room 7231
  Department of Justice
  950 Pennsylvania Ave., NW
  Washington, D.C.  20530-0001

NOVEMBER 2007

28

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 6,484 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) because it has been prepared in a monospaced typeface using WordPerfect 12 with New Courier font at 10.5 characters per inch (twelve-point font).


_____
Jonathan H. Levy
    Counsel for Amicus United States

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of November, 2007, I filed and served the foregoing Brief for Amicus Curiae the United States of America in Support of Plaintiffs-Appellees by causing the original, six paper copies, and one electronic copy to be sent to this Court by Federal Express overnight, and by causing two paper copies and one electronic copy to be served upon the following counsel by Federal Express overnight:

```
Bradley Carroll Weber
Thomas F. Loose
Christopher Michael Bass
LOCKE, LIDDELL & SAPP
2200 Ross Avenue
Suite 2200
Dallas, TX  75201-6776

Kelly Brant Tidwell
PATTON & TIDWELL
4605 Texas Boulevard
Texarkana, TX  75505

Jennifer Parker Ainsworth
WILSON, SHEEHY, KNOWLES, ROBERTSON & CORNELIUS
909 ESE Loop 323
Suite 400
Tyler, TX  75701

Mark D. Taylor
Clayton E. Bailey
Alexander Max Douglas Brauer
BAKER & MCKENZIE
2001 Ross Avenue
Trammell Crow Center
23rd Floor
Dallas, TX  75201
```

_____
Jonathan H. Levy
  Counsel for Amicus United States