No. 07-40651

_____

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

CODY WHEELER, DON DAVIS, and DAVEY WILLIAMS,

Plaintiffs-Appellees,

v.

PILGRIM'S PRIDE CORPORATION,

Defendant-Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

_____

EN BANC BRIEF FOR AMICUS CURIAE THE UNITED STATES
OF AMERICA IN SUPPORT OF PLAINTIFFS-APPELLEES

_____

TONY WEST
  Assistant Attorney General

JOHN M. BALES
  United States Attorney

MICHAEL S. RAAB
  (202) 514-4053
JONATHAN H. LEVY
  (202) 353-0169
  Attorneys, Appellate Staff
  Civil Division, Room 7231
  Department of Justice
  950 Pennsylvania Ave., NW
  Washington, D.C.  20530-0001

_____

_____

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . iii

INTEREST OF THE UNITED STATES.. . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE. . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE.. . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . 2

    A.    <u>Statutory Background</u>.. . . . . . . . . . . . . . . . . 2

    B.    <u>Factual Background and Proceedings Below</u>.. . . . . . . 5

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF THE ARGUMENT.. . . . . . . . . . . . . . . . . . . 8

ARGUMENT: THE ACTS PROHIBITED BY 7 U.S.C. § 192(a)
          AND (b) ARE NOT LIMITED TO THOSE HAVING
          AN ADVERSE EFFECT ON COMPETITION... . . . . . . . . . 9

    A.    The Statutory Language Is Not Limited To
        Acts Having An Adverse Effect On Competition... . . . 9

        1.    Plain Text of § 192(a) & (b).. . . . . . . . . . 9

        2.    Context of § 192 as a whole... . . . . . . . . 11

        3.    The PSA's Specific Example of an
            "Unfair Practice.".. . . . . . . . . . . . . . 12

        4.    The PSA's Similar Provisions.. . . . . . . . . 13

        5.    Identical language in other statutes.. . . . . 14

    B.    Pilgrim Disregards the Statutory Language.. . . . . 15

    C.    Congress Did not Intend to Limit the
        Statute to Acts Having an Adverse Effect
        on Competition... . . . . . . . . . . . . . . . . . 20

       D.   The USDA's Interpretation of § 192(a)
          and (b) Is Entitled to <u>Chevron</u> Deference... . . . . 25

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**TABLE OF AUTHORITIES**

<u>**Page**</u>

**CASES:**

<u>Armour & Co. v. United States</u>,
      402 F.2d 712 (7th Cir. 1968).. . . . . . . . . . . . 15, 29

<u>Beef Nebraska, Inc. V. United States</u>,
      807 F.2d 712 (8th Cir. 1986).. . . . . . . . . . . . 13, 24

<u>Blackfoot Livestock Commission Co. V. USDA</u>,
      810 F.2d 916 (9th Cir. 1987).. . . . . . . . . . . . . 13

<u>Boumediene v. Bush</u>, 128 S. Ct. 2229 (2008). . . . . . . . . . 11

<u>Bowman v. USDA</u>, 363 F.2d 81 (5th Cir. 1966).. . . . . . . . passim

<u>Boyle v. United States</u>, 129 S. Ct. 2237 (2009). . . . . . 16, 20

<u>Bridge v. Phoenix Bond & Indemnity Corp.</u>,
      128 S. Ct. 2131 (2008).. . . . . . . . . . . . . . 16, 18

<u>Brogan v. United States</u>, 522 U.S. 398 (1998). . . . . . . 10, 16

<u>Butz v. Glover Livestock Commission Co.</u>,
      411 U.S. 182 (1973). . . . . . . . . . . . . . . . . . 24

<u>CFTC v. Schor</u>, 478 U.S. 833 (1986). . . . . . . . . . . . 27

<u>Chevron U.S.A. Inc. v. Natural Resources Defense</u>
      <u>Council, Inc.</u>, 467 U.S. 837 (1984).. . . . . . . . . . . 25

<u>CleanCOALition v. TXU Power</u>,
      536 F.3d 469 (5th Cir. 2008).. . . . . . . . . . . . . 10

<u>Estate of Coward v. Nicklos Drilling Co.</u>,
      505 U.S. 469 (1992). . . . . . . . . . . . . . . . . . 28

<u>DeJong Packing Co. v. USDA</u>, 618 F.2d 1329
      (9th Cir.), <u>cert. denied</u>,
      449 U.S. 1061 (1980).. . . . . . . . . . . . . . . . . 15

<u>FTC v. Southwest Sunsites, Inc.</u>,
      665 F.2d 711 (5th Cir. 1982).. . . . . . . . . . . . . 10

FTC v. Sperry & Hutchinson Co., 405 U.S. 233 (1972). . . . . . .  14

Fairbank v. Hardin, 429 F.2d 264 (9th Cir. 1970). . . . . . .  25

Gerace v. Utica Veal Co., 580 F. Supp. 1465
    (N.D.N.Y. 1984). . . . . . . . . . . . . . . . .  10

Hays Livestock Commission Co. v. Maly Livestock
    Commission Co., 498 F.2d 925 (10th Cir. 1974). . . 2, 14, 26

Hyatt v. United States, 276 F.2d 308 (10th Cir. 1960). . .  14, 25

IBP, Inc. v. Glickman, 187 F.3d 974 (8th Cir. 1999). . . . . .  28

Johnson v. McNeil, 217 F.3d 298 (5th Cir. 2000). . . . . . . .  28

KP Permanent Make-Up, Inc. v. Lasting Impression
    I, Inc., 543 U.S. 111 (2004). . . . . . . . . . . . .  11

Kinkaid v. John Morrell & Co.,
    321 F. Supp. 2d 1090 (N.D. Iowa 2004). . . . . . . . .  12

London v. Fieldale Farms Corp., 410 F.3d 1295
    (11th Cir.), cert. denied, 546 U.S. 1034 (2005). . . . 7, 18

Medical Center Pharmacy v. Mukasey,
    536 F.3d 383 (5th Cir. 2008). . . . . . . . . . . . .  11

Milton Abeles, Inc. v. Creekstone Farms Premium
    Beef, LLC, 2009 WL 875553 (E.D.N.Y. 2009). . . . . . .  10

Moosa v. INS, 171 F.3d 994 (5th Cir. 1999). . . . . . . . .  13

Pavelic & LeFlore v. Marvel Entertainment Group,
    493 U.S. 120 (1989). . . . . . . . . . . . . . . . . .  11

Powerex Corp. v. Reliant Energy Services, Inc.,
    551 U.S. 224 (2007). . . . . . . . . . . . . . . . . .  13

Purgess v. Sharrock, 33 F.3d 134 (2d Cir. 1994). . . . . . .  19

Rice v. Wilcox, 630 F.2d 586 (8th Cir. 1980). . . . . . . .  14

Robinson v. Orient Marine Co., Ltd.,
    505 F.3d 364 (5th Cir. 2007). . . . . . . . . . . . . . 8

Robinson v. Shell Oil Co., 519 U.S. 337 (1997). . . . . . . .  12

iv

Schumacher v. Tyson Fresh Meats, Inc.,
      434 F. Supp. 2d 748 (D.S.D. 2006). . . . . . . . . . . . 10

In re Sealed Case, 223 F.3d 775 (D.C. Cir. 2000). . . . . . . 27

Spencer Livestock Commission Co. v. USDA,
      841 F.2d 1451 (9th Cir. 1988). . . . . . . . . . 14, 24-25

Stafford v. Wallace, 258 U.S. 495 (1922). . . . . . . . 3, 7, 23

Standard Oil Co. v. United States,
      221 U.S. 1 (1911). . . . . . . . . . . . . . . . . . .16-17

Texaco Inc. v. Duhe, 274 F.3d 911 (5th Cir. 2001). . . . . . . 11

Thomas v. Eastman Kodak Co.,
      183 F.3d 38 (1st Cir. 1999). . . . . . . . . . . . . . . 19

Travelers Indemnity Co. v. Manley Cattle Co.,
      553 F.2d 943 (5th Cir. 1977). . . . . . . . . . . . . . 24

United States v. Arizaga-Acosta,
      436 F.3d 506 (5th Cir. 2006). . . . . . . . . . . . . . 11

United States v. Doe, 882 F.2d 926 (5th Cir. 1989). . . . . . 10

United States v. Donahue Brothers,
      59 F.2d 1019 (8th Cir. 1932). . . . . . . . . . 14, 24, 26

United States v. Hernandez-Avalos,
      251 F.3d 505 (5th Cir. 2001). . . . . . . . . . . . . . 28

United States v. Perdue Farms, Inc.,
      680 F.2d 277 (2d Cir. 1982). . . . . . . . . . . . . . . 23

Van Wyk v. Bergland, 570 F.2d 701 (8th Cir. 1978). . . . . 24-25

West Virginia University Hospital, Inc. v. Casey,
      499 U.S. 83 (1991). . . . . . . . . . . . . . . . . . . 20

Wilson & Co. v. Benson, 286 F.2d 891 (7th Cir. 1961). . . . . 10


**FEDERAL STATUTES:**

Federal Trade Commission Act. . . . . . . . . . . . . . . . . 15

   15 U.S.C. § 45(a)(1). . . . . . . . . . . . . . . . . . . 14

Packers and Stockyards Act, 7 U.S.C. §§ 181 <u>et seq</u>. . . . passim

  7 U.S.C. § 192 . . . . . . . . . . . . . . . . . . . . passim

  7 U.S.C. § 193 . . . . . . . . . . . . . . . . . . . . 4, 26

  7 U.S.C. § 197b . . . . . . . . . . . . . . . . . . . . 21

  7 U.S.C. § 204 . . . . . . . . . . . . . . . . . . . . 21

  7 U.S.C. § 208 . . . . . . . . . . . . . . . . . . . . 13-14

  7 U.S.C. § 209 . . . . . . . . . . . . . . . . . . . . 4

  7 U.S.C. § 213 . . . . . . . . . . . . . . . . . . . . 13-14

  7 U.S.C. § 224 . . . . . . . . . . . . . . . . . . . . 4

  7 U.S.C. § 228(a) . . . . . . . . . . . . . . . . . . . 4, 21, 27

  7 U.S.C. § 228b . . . . . . . . . . . . . . . . . . . . 24

  7 U.S.C. § 228b-1 . . . . . . . . . . . . . . . . . . . 4, 12-13

  7 U.S.C. § 228b-2 . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1292(b) . . . . . . . . . . . . . . . . . . . 2, 6

Pub. L. No. 74-272, 49 Stat. 648 (1935) . . . . . . . . . . 4, 22

Pub. L. No. 94-410, 90 Stat. 1249 (1976) . . . . . . . . . . 15

**ADMINISTRATIVE AND CONGRESSIONAL MATERIALS:**

<u>In re Corn State Meat Co., Inc.</u>,
    45 Agric. Dec. 995 (1986) . . . . . . . . . . . . . . . 27

<u>In re IBP, Inc.</u>, 57 Agric. Dec. 1353 (1998) . . . . . . . . 28-29

<u>In re ITT Continental Baking Co.</u>,
    44 Agric. Dec. 748 (1985) . . . . . . . . . . . . . . . 27

<u>In re Ozark County Cattle Co.</u>,
    49 Agric. Dec. 336 (1990) . . . . . . . . . . . . . . . 26-27

<u>In re Rodman</u>, 47 Agric. Dec. 885 (1988) . . . . . . . . . . 27

In re Victor L. Kent & Sons, Inc.,
      47 Agric. Dec. 692 (1988). . . . . . . . . . . . . . . .  27

In re White, 47 Agric. Dec. 229 (1988). . . . . . . . . . . .  27

61 Cong. Rec. 1805 (1921).. . . . . . . . . . . . . . . . . .  15

H.R. Rep. No. 85-1048, reprinted in
      1958 U.S.C.C.A.N. 5212, 5213, 5214.. . . . . . . . . .  23

9 C.F.R. § 201.98-201.100.. . . . . . . . . . . . . . . . . .  19

9 C.F.R. § 201.108-1. . . . . . . . . . . . . . . . . . . . .  19

9 C.F.R. § 203.2(c).. . . . . . . . . . . . . . . . . . . . .  19

9 C.F.R. § 203.7(c).. . . . . . . . . . . . . . . . . . . . .  19

9 C.F.R. § 203.10.. . . . . . . . . . . . . . . . . . . . . .  19

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 07-40651
_____

CODY WHEELER, DON DAVIS, and DAVEY WILLIAMS,

Plaintiffs-Appellees,

v.

PILGRIM'S PRIDE CORPORATION,

Defendant-Appellant.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
_____

EN BANC BRIEF FOR AMICUS CURIAE THE UNITED STATES
OF AMERICA IN SUPPORT OF PLAINTIFFS-APPELLEES
_____

### INTEREST OF THE UNITED STATES

This case concerns provisions of the Packers and Stockyards
Act, 7 U.S.C. §§ 181 et seq.  The question presented here is
whether it is possible to prove the existence of (1) an "unfair,
unjustly discriminatory, or deceptive practice or device" in
violation of 7 U.S.C. § 192(a) or (2) an "undue or unreasonable
preference or advantage" or "undue or unreasonable prejudice or
disadvantage" in violation of 7 U.S.C. § 192(b) without
demonstrating an adverse effect on competition.

The United States Department of Agriculture administers the
Packers and Stockyards Act, and it accordingly has a strong
interest in ensuring that the Act is interpreted and applied

properly.   As explained below, the panel and the district court correctly held that § 192(a) and (b) are not limited to acts having an adverse effect on competition.

## STATEMENT OF THE ISSUE

Whether a violation of 7 U.S.C. § 192(a) or (b) may be proven without evidence of an adverse effect on competition.

## STATEMENT OF THE CASE

Plaintiffs have contracts to raise chickens for defendant Pilgrim's Pride Corporation ("Pilgrim").   Their complaint alleges, among other things, that Pilgrim violated 7 U.S.C. § 192(a) and (b) by entering into a preferential arrangement for growing chicks with another grower.   The district court denied Pilgrim's summary judgment motion, which was based on the argument that proof of adverse impact on competition is a necessary element of a claim under 7 U.S.C. § 192(a) or (b).   On interlocutory appeal pursuant to 28 U.S.C. § 1292(b), a panel of this Court affirmed.   The Court subsequently granted Pilgrim's petition for rehearing en banc, which had the effect of vacating the panel's decision.

## STATEMENT OF THE FACTS

A.   Statutory Background

The Packers and Stockyards Act ("PSA") was enacted in 1921 "to comprehensively regulate packers, stockyards, marketing agents and dealers." Hays Livestock Comm'n Co. v. Maly Livestock Comm'n Co., 498 F.2d 925, 927 (10th Cir. 1974).   It "is remedial legislation"

that "should be construed liberally so as to effectuate the purpose

of Congress." Bowman v. USDA, 363 F.2d 81, 85 (5th Cir. 1966).

Among the evils it was intended to combat were "exorbitant charges,

duplication of commissions, [and] deceptive practices in respect of

prices." Stafford v. Wallace, 258 U.S. 495, 515 (1922). The

section at issue in this case, which is codified at 7 U.S.C. § 192,

provides that "[i]t shall be unlawful for any packer or swine

contractor with respect to livestock, . . . or for any live poultry

dealer with respect to live poultry, to:

> (a) Engage in or use any unfair, unjustly discriminatory, or deceptive practice or device; or
>
> (b) Make or give any undue or unreasonable preference or advantage to any particular person or locality in any respect, or subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect; or
>
> (c) Sell or otherwise transfer to or for any other packer, swine contractor, or any live poultry dealer, or buy or otherwise receive from or for any other packer, swine contractor, or any live poultry dealer, any article for the purpose or with the effect of apportioning the supply between any such persons, if such apportionment has the tendency or effect of restraining commerce or of creating a monopoly; or
>
> (d) Sell or otherwise transfer to or for any other person, or buy or otherwise receive from or for any other person, any article for the purpose or with the effect of manipulating or controlling prices, or of creating a monopoly in the acquisition of, buying, selling, or dealing in, any article, or of restraining commerce; or
>
> (e) Engage in any course of business or do any act for the purpose or with the effect of manipulating or controlling prices, or of creating a monopoly in the acquisition of buying, selling, or dealing in, any article, or of restraining commerce; or

3

> (f) Conspire, combine, agree, or arrange with any other person (1) to apportion territory for carrying on business, or (2) to apportion purchases or sales of any article, or (3) to manipulate or control prices; or
>
> (g) Conspire, combine, agree, or arrange with any other person to do, or aid or abet the doing of, any act made unlawful by subdivisions (a), (b), (c), (d), or (e) of this section."

Section 192 originally applied only to the livestock and meat packing industries. "Live poultry dealers" were added in 1935. See Pub. L. No. 74-272, 49 Stat. 648 (1935).

The Secretary of Agriculture administers the PSA with express authority to "make such rules, regulations, and orders as may be necessary to carry out" the statute. 7 U.S.C. § 228(a). The Secretary enforces section 192 against packers and swine contractors (but not live poultry dealers) through formal adjudication. 7 U.S.C. § 193.[1] Either the Attorney General or a private litigant can bring a lawsuit to enforce § 192 with respect to live poultry dealers. 7 U.S.C. §§ 209 & 224.

This case concerns § 192(a)'s prohibition of "unfair, unjustly discriminatory, or deceptive practice[s]" and § 192(b)'s prohibition against providing "undue or unreasonable preference or advantage to any particular person or locality" and complementary prohibition against "subject[ing] any particular person or locality

---

[1]   The Secretary can also enforce § 192(a) against live poultry dealers through formal adjudication to the extent they engage in an "unfair practice" by delaying or attempting to delay payments. See 7 U.S.C. §§ 228b-1 & 228b-2.

to any undue or unreasonable prejudice or disadvantage." The Department of Agriculture has consistently refused to add to the statutory language a requirement – unarticulated by Congress – that adverse effect on competition be an additional mandatory element of the conduct proscribed.

B.  <u>Factual Background and Proceedings Below</u>

Plaintiffs raise poultry under contract with Pilgrim's Pride Corporation ("Pilgrim"), a large live poultry dealer.  Under their contracts, which are typical for the industry, plaintiffs raise chicks provided (and owned throughout the process) by Pilgrim. Pilgrim Record Excerpts Tab E, at 2.  Plaintiffs are compensated based on the relative efficiency with which they grow their flocks. <u>Id.</u>  Pilgrim has a different arrangement with LTD Farm, a grower operated by Bo Pilgrim, Pilgrim's Chief Executive Officer.  LTD purchases chicks from Pilgrim and sells grown chickens back to Pilgrim.  <u>Id.</u> at 2-3.

Plaintiffs allege, among other things, that Pilgrim never informed them of its arrangement with LTD or offered them similar treatment.  They contend that Pilgrim's different treatment of LTD has no reasonable basis and is unfair and constitutes an undue or unreasonable preference in violation of 7 U.S.C. § 192(a) and (b). Pilgrim Record Excerpts Tab E, at 3; Fifth Amended Complaint ¶¶ 57-58 (Docket No. 371).

Pilgrim moved to dismiss, arguing "that to state a claim under the PSA, Plaintiffs must allege that Pilgrim's engaged in prohibited practices that caused an adverse effect on the market." Pilgrim Record Excerpts Tab F, at 4.  The district court denied this motion, as well as Pilgrim's similar motion for summary judgment.  Id. at 4-7; Pilgrim Record Excerpts Tab E.  The district court relied on the plain language of § 192(a) and (b), which it concluded was consistent with the PSA's purpose to address deceptive trade practices in addition to monopolization.  See Pilgrim Record Excerpts Tab E, at 9.

This Court allowed an interlocutory appeal under 28 U.S.C. § 1292(b) based on the district court's certified controlling legal question:  "whether a plaintiff must prove an adverse effect on competition in order to prevail under 7 U.S.C. §§ 192(a)-(b)." Pilgrim Record Excerpts Tab C.  The United States filed an amicus curiae brief in this appeal.

A panel of this Court affirmed the district court's ruling. The panel majority (Judges Jolly and Garza) followed the plain language of the statute, noting that neither § 192(a) nor (b) "contains language limiting its application to only those acts or devices, which have an adverse effect on competition, such as 'restraining commerce.'"  Slip Op. 7.  It refused to "read[] additional terms, such as those that would require an adverse effect on competition, into these sections."  Id.  And the panel

6

found "strong evidence that Congress did not intend sections 192(a)-(b) to require a plaintiff to prove an adverse effect on competition" in the fact that "[s]ections 192(c)-(e), unlike sections 192(a)-(b), prohibit only those acts, which have the effect of 'restraining commerce' or which produce another common antitrust injury, such as 'creating a monopoly.'" Slip Op. 7. The panel concluded that "sections 192(a)-(b) plainly, clearly, and unambiguously do not require an adverse effect on competition." Slip Op. 8.

The panel rejected contrary decisions of the Tenth and Eleventh Circuits, which "generally reached beyond the PSA's clear and unambiguous text, choosing instead to be guided by its legislative history, 'antitrust ancestry,' and 'policy considerations,'" when they "should have been guided by the text." Slip Op. 9 (quoting London v. Fieldale Farms Corp., 410 F.3d 1295, 1307 (11th Cir.), cert. denied, 546 U.S. 1034 (2005)). And the panel stated that both an early Supreme Court decision – Stafford v. Wallace, 258 U.S. 495 (1922) – and the legislative history can be read to support the statute's text. Slip Op. 10-12. The panel reiterated that it would "rest on a plain-text reading of the PSA for our holding that sections 192(a)-(b) do not require a plaintiff to prove an adverse effect on competition to prevail thereunder." Slip Op. 12. Judge Reavley dissented, in part to avoid creating a circuit split. Slip Op. 13.

7

## STANDARD OF REVIEW

On interlocutory appeal, this Court reviews <u>de novo</u> the denial of a motion for summary judgment. <u>Robinson v. Orient Marine Co., Ltd.</u>, 505 F.3d 364, 365 (5th Cir. 2007).

## SUMMARY OF ARGUMENT

The district court and the panel correctly rejected Pilgrim's contention that a plaintiff must always demonstrate an adverse effect on competition to establish a violation of 7 U.S.C. § 192(a) or (b). These provisions prohibit any "unfair, unjustly discriminatory, or deceptive practice," "undue or unreasonable preference or advantage" and "undue or unreasonable prejudice or disadvantage," and contain no limitation with respect to effect on competition. Pilgrim asks this Court to add language to the statute that Congress did not enact.

Although § 192(a) and (b) say nothing about competition, the subsections that immediately follow these provisions, § 192(c)-(f), are expressly limited to acts having an adverse effect on competition. Congress's inclusion of these terms in § 192(c) through (f) and exclusion of them from § 192(a) and (b) was not inadvertent and this important difference in statutory text must be given meaning rather than ignored. Moreover, the same operative language that appears in § 192(a) also appears in other provisions of the PSA, where it has been applied, by this Court and other courts, to acts with no inherent effect on competition. And

8

Congress itself expressly provided that specified late payments (not all of which harm competition) constitute "unfair" practices under the PSA.

The statutory text is reinforced by Congress's stated purposes. Congress undoubtedly intended the PSA to address not only monopolization but also various unfair, deceptive, and fraudulent practices that could result in losses to producers. Moreover, Congress intended the PSA to reach more broadly than the FTC Act, which encompasses "unfair" practices without requiring proof of harm to competition.

The Secretary of Agriculture administers the PSA and has consistently interpreted § 192(a) and (b) to prohibit some actions that have no effect on competition. Even if the statutory language and legislative history left any doubt, this Court should defer to the Secretary's longstanding reasonable interpretation.

## ARGUMENT

**THE ACTS PROHIBITED BY 7 U.S.C. § 192(a) AND (b) ARE NOT LIMITED TO THOSE HAVING AN ADVERSE EFFECT ON COMPETITION.**

**A.    The Statutory Language Is Not Limited To Acts Having An Adverse Effect On Competition.**

1.    <u>Plain Text of § 192(a) & (b)</u>. As the panel recognized, the text of the statute does not make proof of an adverse effect on competition a necessary element of a claim under 7 U.S.C. § 192(a) or (b). The statute prohibits acts that are "unfair, unjustly discriminatory, or deceptive," 7 U.S.C. § 192(a), and that grant

9

"undue or unreasonable preference or advantage" or impose "undue or unreasonable prejudice or disadvantage," 7 U.S.C. § 192(b). Neither of these provisions is limited to acts having an adverse effect on competition. Wilson & Co. v. Benson, 286 F.2d 891, 895 (7th Cir. 1961) ("[T]he language in section [192(a)] does not specify that a 'competitive injury' or a 'lessening of competition' or a 'tendency to monopoly' be proved."); see also Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC, 2009 WL 875553, at *21 (E.D.N.Y. 2009); Schumacher v. Tyson Fresh Meats, Inc., 434 F. Supp. 2d 748, 753-54 (D.S.D. 2006); Gerace v. Utica Veal Co., 580 F. Supp. 1465, 1469-70 (N.D.N.Y. 1984); cf. FTC v. Southwest Sunsites, Inc., 665 F.2d 711, 719 (5th Cir. 1982) (contrasting "deceptive practices" under the FTC Act with "anti-competitive conduct").

Pilgrim can prevail here only by adding a new phrase – "that has an effect on competition" – to the end of § 192(a) and (b). This would be improper. See, e.g., Brogan v. United States, 522 U.S. 398, 403 (1998) (declining to limit a statute forbidding specified "deceptive practices" to only practices "that pervert governmental functions"); CleanCOALition v. TXU Power, 536 F.3d 469, 479 (5th Cir. 2008) (declining to interpret statutory phrase "without a permit" as "without a permit that complies with the CAA"); United States v. Doe, 882 F.2d 926, 928 (5th Cir. 1989) (refusing to add to statutory phrase "from the date upon which such

detention was begun," the language "and from the date upon which such detention order was filed"); see also Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 126 (1989) ("Our task is to apply the text, not to improve upon it."); Texaco Inc. v. Duhe, 274 F.3d 911, 920 (5th Cir. 2001).

2.  Context of § 192 as a whole.  Unlike § 192(a) and (b), § 192(c) through (f) are expressly limited to conduct adversely affecting competition.  See 7 U.S.C. § 192(c) (prohibiting specified conduct that "has the tendency or effect of restraining commerce or of creating a monopoly"); id. § 192(d) & (e) (forbidding specified acts done "for the purpose or with the effect of manipulating or controlling prices, or of creating a monopoly . . ., or of restraining commerce"); id. § 192(f) (forbidding monopolistic conspiracy).  When, as here, "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Boumediene v. Bush, 128 S. Ct. 2229, 2265 (2008) (internal quotation marks omitted); accord, e.g., KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 118 (2004); Medical Center Pharmacy v. Mukasey, 536 F.3d 383, 398 n.33 (5th Cir. 2008); United States v. Arizaga-Acosta, 436 F.3d

11

506, 507-08 (5th Cir. 2006).[2]  Accordingly, § 192(a) and (b) must be read with the understanding that Congress intentionally and purposely declined to limit them to anticompetitive or monopolistic behaviors.  See <u>Kinkaid v. John Morrell & Co.</u>, 321 F. Supp. 2d 1090, 1102-03 (N.D. Iowa 2004) (comparison of § 192(a) with § 192(e) "suggests that 'unfair' or 'deceptive' practices are prohibited separately and apart from anticompetitive or 'monopolistic' practices").[3]

     3.  <u>The PSA's Specific Example of an "Unfair Practice."</u>  The PSA provides a specific example of an "unfair practice":

> Any delay or attempt to delay, by a live poultry dealer which is a party to any such transaction, the collection of funds as herein provided, or otherwise for the purpose of or resulting in extending the normal period of payment for poultry obtained by poultry growing arrangement or purchased in a cash sale, shall be considered an "unfair practice" in violation of [the PSA].  Nothing in this section shall be deemed to limit the meaning of the term "unfair practice" as used in [the PSA].

---

[2]  Pilgrim argues that § 192(a) and (b) must be interpreted in light of their "antitrust context."  But the "context" of § 192(a) and (b) is the statutory language of the remainder of § 192 and the remainder of the PSA, <u>see</u> <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337 341 (1997).  In any event, the PSA is an agriculture statute administered by the USDA that addresses competition-related <u>and</u> <u>other</u> issues in the livestock, swine, and poultry industries.

[3]  Pilgrim suggests that § 192(a) and (b) should be limited to anticompetitive acts to avoid overlap with subsections (c) through (e).  Pilgrim <u>En Banc</u> Br. 27-28.  But § 192(c)-(e) are already limited to anticompetitive acts; similarly limiting § 192(a) and (b) therefore cannot alter the extent of any overlap.

7 U.S.C. § 228b-1(b).  These delayed payments are unfair practices under § 192(a) itself, see Beef Nebraska, Inc. V. United States, 807 F.2d 712, 715 (8th Cir. 1986) (addressing § 288b), despite having no intrinsic effect on competition.  Under Pilgrim's argument, such delayed payments would not be an "unfair practice" unless they could be shown to harm competition.  Pilgrim's argument is thus directly contrary to what Congress provided in § 228b-1(b).

4.  The PSA's Similar Provisions.  Key language in § 192(a) also appears elsewhere in the PSA.  See, e.g., 7 U.S.C. § 208 (prohibiting "unjust, unreasonable, or discriminatory regulation or practice" by stockyard owners and market agencies); id. § 213(a) (prohibiting "any unfair, unjustly discriminatory, or deceptive practice or device" with respect to specified stockyard operations and livestock transactions).  It is a "standard principle of statutory construction . . . that identical words and phrases within the same statute should normally be given the same meaning." Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224, 232 (2007); accord Moosa v. INS, 171 F.3d 994, 1007 (5th Cir. 1999).

Without discussing harm to competition, this Court and other courts of appeals have held that acts without any intrinsic effect on competition violate these PSA provisions.  E.g., Bowman v. USDA, 363 F.2d 81, 85 (5th Cir. 1966) (dealer's failure to pay shipper "unfair" under § 213(a)); Blackfoot Livestock Comm'n Co. V. USDA, 810 F.2d 916, 922 (9th Cir. 1987) (check-kiting a "deceptive

practice[]" under § 213(a)); <u>Rice v. Wilcox</u>, 630 F.2d 586, 592 (8th Cir. 1980) (honoring drafts and then without notice refusing to honor them is a "deceptive practice" under § 208); <u>Hays Livestock Comm'n Co. v. Maly Livestock Comm'n Co.</u>, 498 F.2d 925, 932 (10th Cir. 1974) (retaining proceeds from resale of livestock with knowledge that shippers had not been paid is "unjust and unreasonable" under § 208); <u>Hyatt v. United States</u>, 276 F.2d 308, 312-13 (10th Cir. 1960) (charges for services not performed violates §§ 208 & 213); <u>United States v. Donahue Bros.</u>, 59 F.2d 1019, 1021 (8th Cir. 1932) ("intermingling . . . personal accounts with those belonging to shippers" is "unfair" practice under § 213(a)). Indeed, the Ninth Circuit has expressly held that a § 213(a) covers "a deceptive practice, whether or not it harmed consumers or competitors." <u>Spencer Livestock Comm'n Co. v. USDA</u>, 841 F.2d 1451, 1455 (9th Cir. 1988). Similarly § 192(a) can be violated without harm to competition.[4]

     5.  <u>Identical language in other statutes.</u>  Also relevant is the interpretation of the Federal Trade Commission (FTC) Act, which prohibits "unfair or deceptive acts or practices," 15 U.S.C. § 45(a)(1), and applies to practices "unfair or deceptive in their effect upon consumers, <u>regardless of their nature or quality as</u>

---

[4]  Amicus Tyson concedes that § 192(a) should be interpreted "congruent" with § 213(a) but ignores the substantial body of law (including this Court's <u>Bowman</u> decision) finding § 213(a) violations without finding harm to competition. <u>See</u> Tyson Br. 22.

competitive practices or their effect on competition." FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 239 (1972) (emphasis added). There is no valid reason to interpret the virtually identical words in the PSA more narrowly, as Pilgrim suggests. To the contrary, it is undisputed that the PSA is broader than the FTC Act. DeJong Packing Co. v. USDA, 618 F.2d 1329, 1335 n.7 (9th Cir.), cert. denied, 449 U.S. 1061 (1980)); Armour & Co. v. United States, 402 F.2d 712, 722 (7th Cir. 1968); 61 Cong. Rec. 1805 (1921) (statement of Rep. Anderson) (Act "goes further than" Federal Trade Commission Act's prohibition of unfair methods); id. at 1806 (statement of Rep. Rayburn) (Federal Trade Commission given "wide powers, but not as wide as [those given] the Secretary of Agriculture under this bill").[5]

**B.    Pilgrim Disregards the Statutory Language.**

Although purporting to recognize the "plain meaning" of § 192(a) and (b), Pilgrim ignores the statutory language and proceeds directly to its view of the statutory purpose, which it gleans from just about everything except the statutory text. See Pilgrim En Banc Br. 18-25, 28-29, 37, 46 (relying on "the context,"

---

[5]    Pilgrim (and amicus Tyson Farms) suggest that the PSA should be interpreted more narrowly than the FTC Act because the FTC Act is enforced exclusively by the responsible agency, while the PSA is also enforced through private causes of action. See Pilgrim En Banc Br. 41-42; Tyson Br. 21 n.2. But when the words at issue here ("unfair," "deceptive," etc.) were enacted, there was no private enforcement of the PSA. See Pub. L. No. 94-410, 90 Stat. 1249 (1976) (adding private cause of action to PSA).

"the time the statute was adopted," "Congress's purposes," "precedents or authorities that inform the analysis," "congressional silence," and the statute's "design, object, and policy," "antitrust heritage," and "antitrust ancestry"). But when "the statutory language is clear, there is no need to reach . . . arguments based on statutory purpose[ or] legislative history." Boyle v. United States, 129 S. Ct. 2237, 2246 (2009). Indeed, the Supreme Court has "repeatedly refused to adopt narrowing constructions of [a statute] in order to make it conform to a preconceived notion of what Congress intended to proscribe." Bridge v. Phoenix Bond & Indem. Corp., 128 S. Ct. 2131, 2145 (2008); accord Brogan v. United States, 522 U.S. 398, 403 (1998) ("[I]t is not, and cannot be, our practice to restrict the unqualified language of a statute to the particular evil that Congress was trying to remedy – even assuming that it is possible to identify that evil from something other than the text of the statute itself."). Pilgrim criticizes the panel majority for relying on the "literal language" of § 192(a) and (b), Pilgrim En Banc Br. 13; accord id. at 21, but the Supreme Court requires that language to control.

Pilgrim's reliance on Standard Oil Co. v. United States, 221 U.S. 1 (1911), is entirely misplaced. In Standard Oil, the Supreme Court addressed a statute prohibiting agreements in "restraint of trade." It interpreted this phrase as encompassing only

16

unreasonable restraints of trade for two reasons. First, forbidding all agreements in restraint of trade, read broadly, would forbid "every conceivable contract . . . concerning trade or commerce" – an obviously absurd result. Id. at 60. Second, "restraint of trade" was a term of art that had acquired a narrow meaning over centuries of legal practice in England and the United States. Id. at 59. No similar reasoning applies here. To the contrary, here, applying the statutory language leads to no absurd consequences but rather provides protections to producers against misconduct broader than merely anticompetitive conduct. Nor is there any interpretive history for the words used in the PSA (like "unfair" and "deceptive") comparable to the history of the specialized antitrust phrase at issue in Standard Oil.

At bottom, Pilgrim objects to the plain language of the PSA on policy grounds. Pilgrim contends that the statutory text as written may diminish its efficiency or require it to defend federal causes of action for claims that would otherwise have been state-law issues. See Pilgrim En Banc Br. 43-44. But the fact that a statute may burden a Pilgrim and other live poultry dealers does not mean that it is improper; Congress could well have concluded that such burdens were justified to protect growers. And even if Pilgrim were correct that the PSA as written is flawed from a policy perspective, it is axiomatic that courts "are not at liberty to rewrite [a statute] to reflect . . . views of good policy."

17

Bridge, 128 S. Ct. at 2145.  Indeed, the Supreme Court in Bridge refused to add narrowing language to RICO, despite the contention that the statute as written threatened to turn an abundance of garden-variety local disputes into violations of federal law.  Id.

Pilgrim and its supporting amici suggest that the panel's decision will have catastrophic effects on the industries regulated by the PSA.  See, e.g., Pork Producers Br. 6 (panel ruling "imperils the functioning of livestock and poultry markets"); Cargill Br. 12 (panel ruling "a threat to the entire structure of livestock markets"); Tyson Br. 18 (enforcing PSA as written would frustrate "efficient contracting and marketing practices").  But the Secretary has interpreted and enforced the statute in this manner for decades without catastrophic consequences.

Contrary to the contentions of Pilgrim's amici, the Secretary's interpretation of the PSA is neither "standardless," Pork Producers Br. 7, nor an "open-ended charter" lacking in objective benchmarks, id. at 5.  Like most statutory terms, those within the PSA receive definition and refinement through the language of the statute itself, agency adjudication, regulation, and judicial proceedings.  For example, the Secretary agrees that a primary (but not the sole) purpose of the PSA was to foster competition and, for that reason, practices that have the potential to enhance efficiency should not be condemned as "unfair" under the PSA without consideration of competitive effects.  Thus, in London

18

v. Fieldale Farms Corp., 410 F.3d 1295 (11th Cir. 2005), the Secretary took the position that the termination of a chicken growing contract violated the statute specifically because it lacked a valid economic justification and violated the contract. The Secretary has also issued regulations and policy statements clarifying § 192(a).  See, e.g., 9 C.F.R. §§ 201.98-201.100, 201.108-1, 203.2(c), 203.7(c), 203.10.  Here, the question of whether Pilgrim's different treatment of plaintiffs, on one hand, and LTD, on the other, was "unfair" or otherwise in violation of the statute should be determined on remand, where Pilgrim can prevail by providing a valid economic justification for its actions and by refuting any evidence plaintiffs may present of impermissible motive or effect.

Pilgrim objects to the notion that juries might decide PSA cases alleging unfairness or deception.  Pilgrim En Banc Br. 45; see also Tyson Br. 8, 13-15.  But Congress determined that juries should be trusted, and that determination is controlling.  In any event, it is by no means unusual for juries to be asked to decide what is or is not fair, see, e.g., Thomas v. Eastman Kodak Co., 183 F.3d 38, 57 (1st Cir. 1999) (jury decides whether employee evaluations "were objectively unfair"); Purgess v. Sharrock, 33 F.3d 134, 142 (2d Cir. 1994) (upholding jury verdict in part because "jury could reasonably have concluded that defendants used dishonest, unfair, or improper means"), and there is no reason to

believe that a properly instructed jury,[6] with the aid of expert testimony where appropriate, cannot determine whether a live poultry dealer like Pilgrim has engaged in unfair or deceptive practices.

### C. Congress Did not Intend to Limit the Statute to Acts Having an Adverse Effect on Competition.

"Because the statutory language is clear, there is no need to reach . . . arguments based on statutory purpose[ or] legislative history," Boyle v. United States, 129 S. Ct. 2237, 2246 (2009), and the panel here appropriately refrained from doing so.  However, should the Court deem it relevant, both the statutory purpose and legislative history support the statutory language here.  Although a primary purpose of the PSA was to foster competition, Congress had additional purposes, including curbing specified bad practices (such as deception) and ensuring that producers receive fair prices.  Those additional purposes are served by enforcing the statute as written and not by limiting its reach to anticompetitive behavior.

Pilgrim ignores "[t]he best evidence of [congressional] purpose [which] is the statutory text adopted by both Houses of Congress and submitted to the President." West Virginia Univ. Hosp., Inc. v. Casey, 499 U.S. 83, 98 (1991).  As noted above, the

---

[6]  As indicated above, a proper jury instruction on remand here would allow the jury to consider any valid economic justification Pilgrim proffers for its actions.

operational words of § 192(a) & (b) are not limited to competitive harms, most obviously in prohibiting "deceptive practice[s]." Numerous other provisions within the PSA clearly target harms to interests broader than "competition." For example, this Court noted that 7 U.S.C. § 204, which allows the Secretary to suspend the registration of an insolvent dealer, was enacted "to insure the proper handling of the shipper's funds and their proper transmission to the shipper . . . includ[ing] prompt payment." Bowman v. USDA, 363 F.2d 81, 85 (5th Cir. 1966). And, as noted above, 7 U.S.C. § 228b-1 requires live poultry dealers to meet specified time limits for paying for the poultry they obtain. These provisions help ensure that sellers receive prompt payment generally; they are not limited to situations in which prompt payment is required to promote competition. The amendments to the PSA enacted in 2008 similarly include provisions that cannot be squared with Pilgrim's contention that the PSA must be limited to traditional antitrust concerns. See, e.g., 7 U.S.C. § 197b (limiting both the choice-of-law and the location of the forum for dispute resolution in poultry growing arrangements); id. § 197c(a) (allowing poultry grower to opt out of contractual arbitration clause); id. § 197c(f)(2) (requiring the Secretary to issue regulations regarding "whether the arbitration process provided in a contract provides a meaningful opportunity for the grower or producer to participate fully in the arbitration process").

21

Congress explicitly recognized the existence in the PSA of substantive provisions, like those noted above, that do not fall neatly within traditional antitrust legislation. For example, in 1935, when it first subjected live poultry dealers like Pilgrim to the requirements of § 192(a) and (b), Congress explained its actions in the statutory text:

> [t]he handling of the great volume of live poultry . . . is attendant with various unfair, deceptive, and fraudulent practices and devices, resulting in the producers sustaining sundry losses and receiving prices far below the reasonable value of their live poultry . . . .

Pub. L. No. 74-272, 49 Stat. 648, 648 (1935). Thus, Congress wanted to protect producers (like plaintiffs) from a variety of misconduct by live poultry dealers (like Pilgrim), including fraud. Congress did not state any intent to limit the reach of the statute to frauds (or other wrongs) affecting competition. These statements support Congress's decision to omit any reference to competition from § 192(a) and (b).[7]

The Supreme Court long ago described the purposes of the PSA:

> The <u>chief evil</u> feared is the monopoly of the packers, enabling them unduly and arbitrarily to lower prices to the shipper, who sells, and unduly and arbitrarily to increase the price to the consumer, who buys. Congress thought the power to maintain this monopoly was aided by control of the

---

[7] Under Pilgrim's interpretation of the PSA, outright fraud presumably would not violate the statute unless it had an adverse effect on competition.

22

> stockyards.  <u>Another evil</u>, which it sought to
> provide against by the act, was exorbitant
> charges, duplication of commissions, deceptive
> practices in respect of prices, in the passage
> of the live stock through the stockyards, all
> made  possible  by  collusion  between  the
> stockyards management and the commission men,
> on the one hand, and the packers and dealers,
> on the other.

<u>Stafford v. Wallace</u>, 258 U.S. 495, 514-15 (1922) (emphasis added).

This passage recognizes both the evil of monopolization, and other

evils, including "deceptive practices," that do not necessarily

impair competition.[8]  <u>See</u> <u>United States v. Perdue Farms, Inc.</u>, 680

F.2d 277, 280 (2d Cir. 1982) ("As originally enacted in 1921, the

purpose of the [PSA] was to combat anticompetitive <u>and</u> unfair

practices") (emphasis added).

A  committee  report  accompanying  the  1958  PSA  amendments

similarly states that "[t]he primary purpose of [the PSA] is to

assure fair competition <u>and fair trade practices</u>."  H.R. Rep. No.

85-1048,  <u>reprinted in</u>  1958  U.S.C.C.A.N.  5212,  5213  (emphasis

added).  The Report further observes that protection extends to

"unfair, deceptive, unjustly discriminatory" practices in addition

to "monopolistic practices."  <u>Id.</u> at 5213.

---

[8]  <u>Stafford</u> provides six examples of conduct that gave rise to
the PSA.  258 U.S. at 502-03.  Pilgrim's <u>en banc</u> brief (page 33)
addresses only five.  The sixth example involves simple fraud with
no  intrinsic  effect  on  competition,  namely  "the  frequency  with
which commission men reported to shippers that live stock had been
crippled and had to be sold in that condition at a lower price,
arousing suspicion as to the fact and if it was a fact, as to the
cause of the crippling."  <u>Id.</u>

The Supreme Court's statements and legislative history thus reinforce the plain statutory text; Congress intended the PSA to protect producers from more than just anticompetitive conduct. This Court and other courts of appeals have noted these broader purposes. See Travelers Indem. Co. v. Manley Cattle Co., 553 F.2d 943, 945 (5th Cir. 1977) (PSA "safeguard[s] the farmers and ranchers who produce cattle against the losses they would suffer if they sold their livestock to insolvent or defaulting purchasers"); Spencer Livestock Comm'n Co. v. USDA, 841 F.2d 1451, 1455 (9th Cir. 1988) (PSA "was not intended merely to prevent monopolistic practices, but also to protect the livestock market from unfair and deceptive business tactics"); Beef Nebraska, Inc. V. United States, 807 F.2d 712, 716 (8th Cir. 1986) (7 U.S.C. § 228b enacted because meatpacker bankruptcies were "leaving sellers unpaid"); Van Wyk v. Bergland, 570 F.2d 701, 704 (8th Cir. 1978) ("One purpose of the Act is to assure fair trade practices."); United States v. Donahue Bros., 59 F.2d 1019, 1023 (8th Cir. 1932) (PSA intended to assure owners and shippers of livestock a fair return for their product by preventing "discrimination, exploitation, overreaching, manipulation, or other unfair practices").

In keeping with these broader purposes, a variety of acts that have no intrinsic effect on competition have been held to violate the PSA. See Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 183 (1973) ("incorrect weighing of livestock"); Bowman v. USDA, 363

F.2d 81, 85 (5th Cir. 1966) (failure to pay livestock shippers); <u>Spencer</u>, 841 F.2d at 1454 ("false inflations of purchase weight," failure "to submit complete and accurate accountings," and "destroying invoices"); <u>Van Wyk</u>, 570 F.2d at 704 (failure to timely pay for livestock); <u>Fairbank v. Hardin</u>, 429 F.2d 264, 266 (9th Cir. 1970) (selling cattle at "false and incorrect weights"); <u>Hyatt v. United States</u>, 276 F.2d 308, 310-311, 312 (10th Cir. 1960) (falsification of various consignment documents, which caused no loss).  Pilgrim dismisses these and similar decisions as irrelevant because they do not involve § 192, <u>see</u> Pilgrim <u>En Banc</u> Br. 34, but Pilgrim's theory is that the entire PSA (not just § 192) was intended to address only anticompetitive conduct.  Its view therefore cannot be reconciled with these numerous decisions holding that at least some portions of the PSA <u>do</u> proscribe conduct that has no intrinsic anticompetitive effect.

### D.    The USDA's Interpretation of § 192(a) and (b) Is Entitled to <u>Chevron</u> Deference.

The agency's reasonable interpretation of the Act is entitled to deference.  <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ."); <u>see</u> <u>Bowman v. USDA</u>, 363 F.2d 81, 84 (5th Cir. 1966) (Secretary's consistent interpretation of solvency, undefined in the PSA, should be given "great weight"); <u>Van Wyk</u>, 570 F.2d at

705 (according "great deference" to the Secretary's determination that failure to timely pay for livestock is an unfair or deceptive practice or device under the PSA); Hays Livestock Comm'n Co. v. Maly Livestock Comm'n Co., 498 F.2d 925, 931 (10th Cir. 1974) (Secretary's interpretation of unfair or deceptive practices is entitled to "great deference" on review of reparation orders); Donahue Bros., 59 F.2d at 1023 (finding by the Secretary that acts, including intermingling personal and shippers' accounts, were "unfair" under the PSA "is entitled to great weight").[9]

Pilgrim proffers two reasons not to defer, and neither has merit. First, Pilgrim argues that "the PSA does not delegate authority to the Secretary to adjudicate alleged violations of Section 192 by live poultry dealers." Pilgrim En Banc Br. 39. But the PSA does give the Secretary authority to adjudicate alleged violations of Section 192 by packers and swine contractors. 7 U.S.C. § 193. In the course of § 192 adjudications, "[t]he Department has consistently taken the position that in order to prove that any practice is unfair under . . . 7 U.S.C. § 192(a) . . . it is not necessary to prove predatory intent, competitive injury, or likelihood of injury." In re Ozark County Cattle Co.,

---

[9]  Deference was irrelevant under the panel's plain language analysis. Judge Reavley's dissent characterizes the agency's interpretation as "certainly reasonable" but fails to explain why it was not entitled to deference.

49 Agric. Dec. 336, 365 (1990) (internal quotations omitted).[10]
This interpretation warrants judicial deference in any case
involving § 192(a) or (b), including those that the agency did not
adjudicate. See In re Sealed Case, 223 F.3d 775, 779, 780 (D.C.
Cir. 2000) (agency interpretation of statute, developed in agency
enforcement proceedings, is given the same deference, even in a
criminal prosecution). In any event, Congress delegated to the
Secretary the authority to interpret these provisions (as applied
to everyone, including live poultry dealers) through regulations.
7 U.S.C. § 228(a). Indeed, Congress has specifically required the
Secretary to issue such regulations, 7 U.S.C. § 228 note.[11]

Given the unquestioned deference to which USDA's adjudicatory
interpretations of § 192(a) and (b) with respect to packers and

---

[10] Accord, e.g., In re Rodman, 47 Agric. Dec. 885, 912 (1988);
In re Victor L. Kent & Sons, Inc., 47 Agric. Dec. 692, 742 (1988);
In re White, 47 Agric. Dec. 229, 276 (1988); In re Corn State Meat
Co., Inc., 45 Agric. Dec. 995, 1023 (1986); In re ITT Continental
Baking Co., 44 Agric. Dec. 748, 781 (1985).

[11] Congress's instructions to the Secretary to issue
regulations belies Pilgrim's assertion that Congress has silently
ratified judicial decisions requiring adverse effect on
competition. See Pilgrim En Banc Br. 37-38. As noted above, the
judicial decisions are mixed, leaving no clear position to be
"ratified." Moreover, Congress has now instructed the Secretary to
issue regulations specifically implementing § 192(b), see 7 U.S.C.
§ 228 note, and that instruction must be read against the backdrop
of the agency's repeated assertions that acts without adverse
effect on competition may be included, see CFTC v. Schor, 478 U.S.
833, 846 (1986). Regardless of whether Congress has thus endorsed
the Secretary's "longstanding administrative interpretation," id.,
it has indicated that the Secretary is in the best position to
interpret the relevant statutory provisions.

swine contractors are entitled, Pilgrim's argument boils down to the suggestion that § 192(a) and (b) requires a showing of competitive harm for live poultry dealers even if no such showing is necessary for packers and swine contractors. This argument violates the general principle that "[t]he same language in a single statutory provision cannot have two different meanings." Johnson v. McNeil, 217 F.3d 298, 301 (5th Cir. 2000); accord Estate of Coward v. Nicklos Drilling Co., 505 U.S. 469, 479 (1992); United States v. Hernandez-Avalos, 251 F.3d 505, 509 (5th Cir. 2001).

Second, Pilgrim suggests that the agency's position has been inconsistent, quoting a single administrative decision which stated that a particular right of first refusal violated § 192(a) "'because it ha[d] the effect or potential of reducing competition.'" Pilgrim En Banc Br. 39-40 (quoting In re IBP, Inc., 57 Agric. Dec. 1353 (1998)).[12] Contrary to Pilgrim's assertion, IBP does not state (or in any way imply) that harm to competition is invariably necessary to prove a violation of § 192(a); it held only that, in some cases, harm to competition might be sufficient to make a practice violate § 192. This holding says nothing about whether other practices (e.g., fraud) may be inherently "unfair" (and therefore violate the PSA) regardless of their effect on

---

[12]    The administrative decision in In re IBP was reversed. IBP, Inc. v. Glickman, 187 F.3d 974 (8th Cir. 1999).

competition.[13]   Accordingly, <u>IBP</u> involves no inconsistency in the Secretary's position and provides no reason not to defer to that position.[14]

## CONCLUSION

For the foregoing reasons, the district court's holding that 7 U.S.C. § 192(a) and (b) do not require a showing of adverse effect on competition should be affirmed.

Respectfully submitted,

TONY WEST
  <u>Assistant Attorney General</u>

JOHN M. BALES
  <u>United States Attorney</u>

MICHAEL S. RAAB
  (202) 514-4053
JONATHAN H. LEVY
  (202) 353-0169
  <u>Attorneys, Appellate Staff</u>
  <u>Civil Division, Room 7231</u>
  <u>Department of Justice</u>
  <u>950 Pennsylvania Ave., NW</u>
  <u>Washington, D.C.  20530-0001</u>

SEPTEMBER 2009

---

[13]   Indeed, the fact that the Secretary considered harm to competition in <u>IBP</u> is further evidence that the Secretary's determinations in this regard are not standardless and that the very factor with which Pilgrim appears preoccupied – harm to competition – can be relevant and possibly even dispositive.

[14]   Similarly, <u>Armour & Co. v. United States</u>, 402 F.2d 712, 717 (7th Cir. 1968), held that "a coupon program" offering 50 cents off a package of bacon "does not violate [§ 192(a)], absent some predatory intent or some likelihood of competitive injury." It did not hold, as Pilgrim suggests, that no practice, regardless of how unfair, fraudulent, or deceitful, can ever violate § 192(a) absent harm to competition.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 6,909 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) because it has been prepared in a monospaced typeface using WordPerfect 12 with New Courier font at 10.5 characters per inch (twelve-point font).


_____
Jonathan H. Levy
  Counsel for Amicus United States

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of September, 2009, I filed and served the foregoing En Banc Brief for Amicus Curiae the United States of America in Support of Plaintiffs-Appellees by causing the original, twenty paper copies, and one electronic copy to be sent to this Court by Federal Express overnight, and by causing two paper copies and one electronic copy to be served upon the following counsel by Federal Express overnight:

        Bradley Carroll Weber
        Thomas F. Loose
        Christopher Michael Bass
        LOCKE, LIDDELL & SAPP
        2200 Ross Avenue
        Suite 2200
        Dallas, TX  75201-6776

        Kelly Brant Tidwell
        PATTON & TIDWELL
        4605 Texas Boulevard
        Texarkana, TX  75505

        Jennifer Parker Ainsworth
        WILSON, SHEEHY, KNOWLES, ROBERTSON & CORNELIUS
        909 ESE Loop 323
        Suite 400
        Tyler, TX  75701

        Mark D. Taylor
        Clayton E. Bailey
        Alexander Max Douglas Brauer
        Jay Forrest Utley
        BAKER & MCKENZIE
        2001 Ross Avenue
        Trammell Crow Center
        23rd Floor
        Dallas, TX  75201

Lance Lange
BELIN LAW FIRM
666 Walnut Street
Des Moines, IA  50309

Gary J. Kushner
HOGAN & HARTSON, L.L.P.
555 13th Street, NW
Washington, DC  20004-1109

Andrew E. Tauber
Michael E. Lackey, Jr.
MAYER BROWN, L.L.P.
1999 K Street, NW
Washington, DC 20006-1101

Jay Thomas Jorgensen
SIDLEY AUSTIN, L.L.P.
1501 K Street, NW
Washington, DC  20005

Christopher James MacAvoy
Jerrold Joseph Ganzfried
HOWRY LLP
1299 Pennsylvania Ave., NW
Washington, DC  20004


_____
Jonathan H. Levy
  Counsel for Amicus United States